UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS
LOCAL 106, et al.,

                      Plaintiffs,

                                                  Case # 16-CV-932-FPG

v.

                                                  DECISION AND ORDER

MARKER ELECTRICAL
CONTRACTING, INC., et al.,

                     Defendants.

## INTRODUCTION

Plaintiffs International Brotherhood of Electrical Workers Local 106 ("IBEW"), International Brotherhood of Electrical Workers Local 106 Annuity Fund ("Annuity Fund"), International Brotherhood of Electrical Workers Health and Welfare Fund ("Health and Welfare Fund"), International Brotherhood of Electrical Workers Local 106 Joint Apprentice Training Fund ("JATC Fund"), and International Brotherhood of Electrical Workers Local 106 Pension Fund ("Pension Fund") bring this action against Defendants Marker Electrical Contracting, Inc. ("Marker, Inc.") and Craig Marker ("Marker") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, the Labor Management Relations Act ("the LMRA"), 29 U.S.C. §§ 141 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq.* ECF No. 1.

Plaintiffs filed their Complaint on November 22, 2016. ECF No. 1. On December 27, 2016, Plaintiffs filed Affidavits of Service affirming that Defendants had been served with the Summons and Complaint on December 13, 2016. ECF Nos. 3–4. Defendants subsequently failed to answer

or otherwise respond to the Complaint. Accordingly, on January 13, 2017, Plaintiffs sought an entry of default, ECF No. 5, and the Clerk of Court then entered default on January 17, 2017, ECF No. 6. Plaintiffs then filed a Motion for Default Judgment on November 17, 2017. ECF No. 9. For the reasons that follow, Plaintiff's Motion (ECF No. 9) is GRANTED in part and DENIED in part.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment. First, the plaintiff must have secured an entry of default from the clerk, which requires a showing, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend" itself in the action brought against it. *See* Fed. R Civ. P. 55(a). Once the plaintiff has obtained an entry of default, if its claim against the defendant is not "for a sum certain" (or for "a sum that can be made certain through computation"), the plaintiff "must apply to the court for a default judgment." *See* Fed. R. Civ. P. 55(b)(1)–(2).

The clerk's entry of default does not mean that default judgment is automatically warranted. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam). Instead, "the court may, on [the] plaintiff's motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Id.*; *see also Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) ("[I]t is well established that . . . ['][a] party's default is deemed to constitute a concession of all well pleaded allegations of liability. . . .'" (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992))). If liability is established, the Court must then determine the proper amount of damages, which requires evidentiary support. *See Moulton Masonry*, 779 F.3d at 189 ("[A] party's default . . . is not considered an admission of damages."

(quoting *Metro Found.*, 699 F.3d at 234)). Accordingly, the Court turns first to the allegations in Plaintiffs' Complaint, credited as true, to determine whether Plaintiffs are entitled to default judgment.

## ANALYSIS

Plaintiff IBEW is a labor organization within the meaning of § 301 of the LMRA, 29 U.S.C. § 185, and an employee organization within the meaning of § 3 of ERISA, 29 U.S.C. § 1002. In addition, the Plaintiff Funds are employee benefit plans and multiemployer plans within the meaning of § 3 of ERISA, 29 U.S.C. § 1002. Plaintiff IBEW "represents employees in the electrical industry," and the Plaintiff Funds "are employee benefit funds established and maintained pursuant to [Plaintiff] IBEW's Collective Bargaining Agreement with employers, including . . . Defendant Marker[,] Inc." ECF No. 1, at 3. The Plaintiff Funds provide various benefits to those employees for whom employers contribute under the CBAs with Plaintiff IBEW. Plaintiffs maintain their offices in Jamestown, New York.

Defendant Marker, Inc. is an employer within the meaning of § 301 of the LMRA, 29 U.S.C. § 185, and § 3 of ERISA, 29 U.S.C. § 1002. Defendant Marker, Inc. is a corporation that does business in New York and maintains its offices in Jamestown, New York. Defendant Marker serves as the principal officer of Defendant Marker, Inc., and is "the majority, if not sole[,] shareholder of [Defendant] Marker, Inc." ECF No. 1, at 4.

Plaintiff IBEW and Defendant Marker, Inc. are parties to CBAs[1] that require Defendant Marker, Inc. "to deduct and remit wage deductions to [Plaintiff] IBEW and to remit employer

---

[1] The CBAs consist of an Inside Agreement (ECF No. 1-1) and a Residential Agreement (ECF No. 1-2). The former, by its terms, was effective through at least December 31, 2015, *see* ECF No. 1-1, at 5–6, and the latter—per the Complaint—was "extended through the time period relevant" to Plaintiffs' claims, ECF No. 1, at 4; *see also* ECF No. 1-2, at 5 (remaining effective, by its terms, through December 31, 2008, and "continu[ing] in effect for year to year thereafter[] . . . unless changes [sic] or terminated").

contributions to the [Plaintiff] Funds for hours worked by employees represented by [Plaintiff] IBEW." *Id.* During the time periods at issue, Defendant Marker, Inc. "employed an employee(s) represented by [Plaintiff] IBEW and covered by the [CBAs]." *Id.*

In the event of late payment, the CBAs "provide[] for a penalty . . . as well as interest at the rate of 1 ½ percent for each month that the payments are delinquent." ECF No. 1, at 5. In light of that provision, on or about January 30, 2015, Defendants entered into an Agreement with Plaintiffs to repay delinquent contributions[2] for the period from October 2013 through April 2014, along with the CBAs' applicable interest "from the due date of the contribution to the date of payment." *Id.* at 7. Pursuant to the Agreement, Defendant Marker, Inc. paid the delinquent contributions "on or about March 26, 2015," but "failed to pay the interest due." *Id.* Following that failure, Defendant Marker, Inc. also failed to remit both the wage deductions to Plaintiff IBEW and contributions to the Plaintiff Funds required under the CBAs for the period from May 2015 to August 2015.

## I. Federal Claims Against Defendants

Taken as true, the allegations in Plaintiffs' Complaint establish Defendant Marker, Inc.'s liability under the LMRA. They would also establish its liability under ERISA, but Plaintiffs lack standing to bring the ERISA claim against Defendant Marker, Inc., and—in turn—they cannot seek individual liability under ERISA for Defendant Marker. If Plaintiffs sought to hold Defendant Marker individually liable under the LMRA, the pleadings are insufficient to support such a finding. Finally, as pleaded, Plaintiffs' NYLL claim appears to be preempted by the LMRA.

---

[2] The Agreement attached to the Complaint appears to reference delinquent contributions to the Plaintiff Funds and delinquent deductions to Plaintiff IBEW, but the Complaint only cites delinquent contributions. *Compare* ECF No. 1-4, at 2 (describing "contributions and wage deductions" and stating that Defendant Marker, Inc. "is delinquent to the Funds and IBEW"), *with* ECF No. 1, at 7 (describing only "delinquent contributions").

4

### A. Defendant Marker, Inc.

#### 1. ERISA

While Defendant Marker, Inc. would be liable under ERISA for failing to make the necessary contributions, neither Plaintiff IBEW nor the Plaintiff Funds can properly bring this claim. Section 515 of ERISA provides that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Defendant Marker, Inc.'s failure to remit the requisite contributions to the Plaintiff Funds under the CBAs would thus constitute a violation of § 515 of ERISA. *See, e.g.*, *Bricklayers Ins. & Welfare Fund v. Verse Inc.*, No. 12-CV-4271 (FB)(JMA), 2013 WL 4883966, at *4 (E.D.N.Y. Sept. 11, 2013) (adopting report and recommendation).

Yet, under the express terms of ERISA, Plaintiffs lack standing to bring this claim. Section 502(a)(3) states that "a civil action may be brought . . . by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3). With respect to the Plaintiff Funds, this claim was not brought by their *trustees*—it was brought by the Plaintiff Funds themselves. Because the Plaintiff Funds are "the employment benefit plans, not one of the enumerated plaintiffs granted standing to sue under ERISA," they cannot bring the ERISA claim. *See Metal Lathers Local 46 Pension Fund v. River Ave. Contracting Corp.*, 954 F. Supp. 2d 250, 255 (S.D.N.Y. 2013); *see also Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d Cir. 2005) ("The [Supreme] Court has also held that § 502(a)(3) strictly limits the 'universe of plaintiffs who may bring certain civil actions.' The Second Circuit has, of course, followed on these well-marked paths." (quoting *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 247 (2000))); *Pressroom Unions–Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 891–92 (2d Cir. 1983); *E. States Health*

*& Welfare Fund v. Philip Morris, Inc.*, 11 F. Supp. 2d 384, 400–01 (S.D.N.Y. 1998) ("The Second Circuit has taken a very strict view of who has standing to bring suits under § 502, refusing to extend standing beyond the plaintiffs specifically named in ERISA.").

The strict exclusivity of § 502(a)(3) also prevents Plaintiff IBEW from bringing the ERISA claim. Like the Plaintiff Funds, Plaintiff IBEW—an employee organization—does not fall within the class of enumerated plaintiffs granted standing under ERISA. *See Boyle v. SEIU Local 200 United Benefit Fund*, No. 5:15-cv-517 (GLS/DEP), 2016 WL 3823007, at *4 (N.D.N.Y. July 12, 2016) ("[N]either plaintiff UPSEU nor UPSE, as labor unions, ha[s] standing to sue for ERISA relief."); *Local 100, Transp. Workers Union, AFL-CIO v. Rosen*, No. 06 Civ. 4787(RPP), 2007 WL 2042511, at *3 (S.D.N.Y. July 13, 2007) ("Defendants correctly assert that Plaintiffs, Local 100 and Toussaint, do not have standing under [ERISA]."); *Toussaint v. JJ Weiser & Co.*, No. 04 Civ. 2592(MBM), 2005 WL 356834, at *6 (S.D.N.Y. Feb. 13, 2005) ("[T]here has been no claim that Local 100 is designated by any participant as a beneficiary nor any suggestion that it qualifies as an ERISA fiduciary. Therefore, Local 100 itself does not have standing to sue under ERISA."); *McCabe v. Trombley*, 867 F. Supp. 120, 124–25 (N.D.N.Y. 1994) ("Standing for employee organizations is not mentioned in the statute, and this court can not substitute its will for that of congress. Because Local 747 is not a participant, beneficiary, or fiduciary, it has no standing to sue under ERISA." (citations omitted)); *Dist. 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F. Supp. 1468, 1476 (S.D.N.Y. 1983) ("District 65 has no standing under the clear language of ERISA § 502(a) to assert claims under ERISA."); *see also Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 121 (2d Cir. 2002) ("Absent a valid assignment of a claim, at least, non-enumerated parties lack statutory standing to bring suit under § 1132(a)(3) even if they have a direct stake in the outcome of the litigation.").

In the absence of a plaintiff with standing to bring the ERISA claim, Plaintiffs' Motion for Default Judgment is DENIED as to that claim against Defendant Marker, Inc.

2. **The LMRA**

With respect to the LMRA, Defendant Marker, Inc. is ultimately liable to Plaintiffs. However, as a preliminary matter, the Court addresses some ambiguities in the pleadings. The causes of action regarding breach of the CBAs and Agreement do not reference any statutory provision under which they proceed. The Complaint generally states, though, that Plaintiffs' claims are brought pursuant to (1) ERISA, "for failure to make employee benefit fund contributions," and (2) the LMRA, "for breach of the [CBAs] and failure to pay wage deductions and employer contributions." ECF No. 1, at 2. Thus, when Plaintiffs thereafter assert claims for "a breach of the [CBAs]" and "a breach of the [CBAs] and breach of the Agreement," *Id.* at 5, 7, the Court understands the claims for breach of the CBAs to be brought under the LMRA.

Technically speaking, the Complaint does not state that the Agreement-related claim is brought under the LMRA. But the alternative would be that it proceeds as a common-law claim for breach of contract, in which case, it would be preempted by the LMRA.[3] *See* 28 U.S.C. § 185(a); *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (per curiam). Under these circumstances, with Plaintiffs having referenced the LMRA as the general basis for their breach-of-contract claims, the Court treats Plaintiffs' claim for a breach of the Agreement as a claim brought under the LMRA. *See, e.g.*, *Vera*, 335 F.3d at 114 ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by

---

[3] This would be the case because, as discussed *infra*, the Agreement is itself a contract between Plaintiff IBEW, the Plaintiff Funds, Defendant Marker, Inc., and Defendant Marker—moreover, the Agreement memorializes and seeks redress for violations of the CBAs in lieu of legal action. *See* ECF No. 1-4.

federal labor-contract law." (alteration in original) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985))).

To that end, Defendant Marker, Inc. is liable to Plaintiffs for its violations of the CBAs and Agreement. Section 301(a) of the LMRA instructs that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 28 U.S.C. § 185(a). In that vein, § 301 permits an employer to "be held liable for failing to remit dues or contributions to a labor organization as a CBA requires." *Verse*, 2013 WL 4883966, at *4. Defendant Marker, Inc.'s failure to remit the requisite deductions to Plaintiff IBEW and contributions to the Plaintiff Funds under the CBAs, along with its failure to pay the interest due pursuant to the Agreement addressing its delinquencies under the CBAs, renders it liable under § 301(a) of the LMRA.

By the terms of § 301(a), Plaintiff IBEW may properly seek the deductions required under the CBAs. *See, e.g.*, *Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Triple H Concrete Corp.*, No. 15 Civ. 6687 (ARR) (VMS), 2018 WL 1178036, at *6 (E.D.N.Y. Feb. 16, 2018) ("Where a CBA requires remittance of dues to a union, a union may enforce its contractual rights under the LMRA."), *adopted*, 2018 WL 1175151 (E.D.N.Y. Mar. 6, 2018). In addition, the Plaintiff Funds would typically be able to seek the unpaid contributions under § 301(a). *See, e.g.*, *River Ave.*, 954 F. Supp. 2d at 256 (contrasting LMRA claims, which were "properly brought" by the plaintiff funds, with ERISA claims, for which the plaintiff funds lacked standing). The Court notes, however, that the CBAs appear to authorize only the trustees of the Plaintiff Funds, "in addition to and with or without the [IBEW]," to sue for an employer's failure to make the provided-for contributions. *See*

ECF No. 1-1, at 27 (Section 6.07(15) of the Inside Agreement); ECF No. 1-2, at 17 (Section 6.01a(12) of the Residential Agreement). While that provision may affect the Plaintiff Funds' ability to sue, Plaintiff IBEW would also be entitled to seek the contributions due under the CBAs pursuant to § 301(a), so the claim for contributions is properly before the Court. *See Int'l Ass'n of Heat & Frost Insulators & Allied Workers Local Union No. 12A v. Benjamin Kurzban & Son Control, Inc.*, No. 16-CV-00106 (JGK) (KHP), 2017 WL 7513238, at *2 (S.D.N.Y. Mar. 20, 2017), *adopted*, 2018 WL 798739 (S.D.N.Y. Feb. 8, 2018); *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 214 (S.D.N.Y. 2000) ("Section 301 generally grants unions standing to vindicate employee rights pursuant to a collective bargaining agreement . . . .").

Plaintiffs may also seek the interest due under the later Agreement between Plaintiffs and Defendants, which meets § 301(a)'s description of a "contract between an employer and a labor organization," and also addresses Defendant Marker, Inc.'s delinquencies under the governing CBAs. *See* 29 U.S.C. § 301(a); *see also Benjamin Kurzban*, 2017 WL 7513238, at *2 n.1 ("The Settlement Agreement between Plaintiffs and Defendant . . . can be fairly characterized as a labor contract governed by the LMRA, under which Defendant conceded that it failed to meet its obligations under the CBA and ERISA."); *Gesualdi v. Fortunata Carting Inc.*, 5 F. Supp. 3d 262, 270–71 (E.D.N.Y. 2014) (adopting report and recommendation).

### B. Defendant Marker

#### 1. ERISA

Plaintiffs seek to hold Defendant Marker individually liable pursuant to Defendant Marker, Inc.'s violation of ERISA. However, since Plaintiffs do not have standing to bring a claim under ERISA, they have no attendant path by which to additionally hold Defendant Marker responsible.[4]

---

[4] Moreover, the Second Circuit has made clear that "an individual cannot be held 'liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager.'" *Cement & Concrete Workers Dist.*

9

### 2. The LMRA

To the extent Plaintiffs sought to hold Defendant Marker individually liable under the LMRA, that is not clearly alleged.[5] But even if the Court read the Complaint to assert individual liability for the LMRA claims, the facts alleged would not support such a determination.

If the Court were to assess Defendant Marker's potential liability under the CBAs and Agreement, New York law would guide its analysis, even though the claims proceed pursuant to the LMRA. *See Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co., Inc.*, 301 F.3d 50, 53 (2d Cir. 2002) (per curiam). To that end, "New York law requires that there be 'clear and explicit evidence' of the defendant's intent to add personal liability to the liability of the entity, where entity liability is established under the agreement." *Id.* (quoting *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991)). The Second Circuit has observed that such determinations are "rare," given the need for "overwhelming evidence of the signatory's intention to assume personal liability." *Id.* (quoting *Lerner*, 938 F.2d at 5). In assessing intent, courts are to consider "the contract's length, the location of the liability provision relative to the signature line, the presence of the name of the signatory in the contract itself, 'the nature of the negotiations leading to the contract,' and the signatory's role in the corporation.'" *Id.* (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994)). "[T]he mere presence of a personal liability clause in the signed agreement" is insufficient to demonstrate "the high degree of intention." *Id.* at 54.

---

*Council Welfare Fund v. Lollo*, 35 F.3d 29, 33 (2d Cir. 1994) (quoting *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993)). Thus, Defendant Marker's status as principal officer and majority (or sole) shareholder would not, standing alone, create liability on his behalf—if an ERISA claim had been properly brought, special circumstances would still need to justify the imposition of individual liability. *See, e.g.*, *Trustees of the United Plant v. C.P. Perma Paving Constr., Inc.*, No. 15 Civ. 1171 (AMD) (SMG), 2016 WL 1029507, at *2 (E.D.N.Y. Mar. 9, 2016).

[5] In describing the alleged breach of the Agreement, Plaintiffs state that Defendant "Marker, Inc. . . . has failed to pay the interest due," but they then assert that Defendant "Marker's failure . . . is a breach"—not Defendant Marker, Inc. *See* ECF No. 1, at 7. The Court is unclear as to whether this is a typographical error, or whether Plaintiffs are also attempting to hold Defendant Marker individually liable.

In each of the two Letters of Assent (by which Defendant Marker, Inc. agreed to be bound to the CBAs), Defendant Marker signed only once, expressly "for the employer," in his capacity as Defendant Marker, Inc.'s president. *See* ECF No. 1-3, at 2–3. That is plainly insufficient to confer individual liability under the CBAs, which—additionally—do not appear to contain any provision related to individual liability. *See* ECF Nos. 1-1, 1-2. Accordingly, Defendant Marker cannot be held individually liable under the LMRA for Defendant Marker, Inc.'s violations of the CBAs.

The Agreement is a closer call: it is less than four pages in length, it expressly states that "Marker personally guarantees the payment of the delinquent contributions, current contributions and interest," and it references two confessions of judgment—one executed by Defendant Marker, Inc., and the other executed by Defendant Marker himself. *See* ECF No. 1-4, at 4. The liability provision appears midway through the Agreement, but—as noted—the document is less than four pages long. Moreover, Defendant Marker is the president of Defendant Marker, Inc.

Those factors notwithstanding, the Court has no point of reference for what, if any, negotiations preceded the Agreement. While the Agreement states that "IBEW, the Funds, Marker, Inc. and Marker wish to resolve the delinquency without the expense of litigation," *id.* at 3, Plaintiffs' failure to provide any further context for the Agreement's formation complicates the Court's assessment of intent, *see, e.g.*, *Sullivan v. Marble Unique Corp.*, No. 10 CV 3582(NGG)(LB), 2011 WL 5401987, at *9 (E.D.N.Y. Aug. 30, 2011) (collecting cases), *adopted*, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011). In addition, the signature page contains two signature lines—one for Defendant Marker, Inc., and one for Defendant Marker—but Defendant Marker only signed the first, in his capacity as Defendant Marker, Inc.'s president. *See* ECF No. 1-4, at 4. The Court finds it noteworthy that the signature line apparently designated for "Craig Marker" to

11

sign in his individual capacity contains no signature at all. *See id.* at 5; *Thomsen Constr.*, 301 F.3d at 54 (giving weight to "the appearance of only one signature[] . . . in [an] official capacity"); *Sullivan*, 2011 WL 5401987, at *10 (crediting the fact that the individual defendant "signed the . . . Agreement only once in his official capacity, leaving the space above 'Individual Signature' blank"). In light of these facts, and the general "presumption against individual liability' in . . . LMRA cases," the Court cannot determine that this case is one of those "rare" instances in which individual liability should be imposed. *See Sullivan*, 2011 WL 5401987, at *10 (quoting *Lerner*, 938 F.3d at 3).

Based on the foregoing, the pleadings do not support the imposition of liability on Defendant Marker. Accordingly, Plaintiffs' Motion for Default Judgment on its federal claims against Defendant Marker is DENIED.

## II.     State Claim Against Defendants

Based on the pleadings presented, Defendants cannot be held liable for the claim brought pursuant to the NYLL. In their Complaint, Plaintiffs maintain that Defendants' "fail[ure] to pay the wage deductions and employer contributions" constitutes a violation of "Section 190 et seq. of the New York State Labor Law." ECF No. 1, at 6. As a primary matter, the Complaint fails to identify the actual provisions under which Plaintiffs would hold Defendants liable—it simply makes general reference to "New York State Labor Law Section 190 et seq." *See* ECF No. 1, at 6. The Court has no further direction by which to ascertain Plaintiffs' theory of liability under the NYLL.

Moreover, to the extent this claim is based on Defendants' failure to pay pursuant to the CBAs, it would be preempted by § 301(a) of the LMRA.[6] The Second Circuit has explained that,

---

[6] If Plaintiffs intended to assert obligations independent of the CBAs under some specific portion of the NYLL, their failure to identify any applicable provision—and plead facts accordingly—proves fatal. *Cf. Levy v. Verizon Info. Servs.*

12

"when a state claim alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by section 301 and must instead by resolved by reference to federal law." *Vera*, 335 F.3d at 114; *see also Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 423 (S.D.N.Y. 2013) (listing one category of such preemption as "cases in which a plaintiff alleges that defendant violated the CBA itself"). In addition, Plaintiffs have already asserted a claim under the LMRA for violations of the CBAs. Therefore, default judgment is DENIED as to Plaintiffs' NYLL claim against Defendants.

In sum, Plaintiffs' Motion for Default Judgment is GRANTED as to Defendant Marker, Inc.'s liability under the LMRA for its failure to pay the contributions and deductions required under the CBAs, and for its failure to pay the interest due under the Agreement, but DENIED as to liability in all other respects.

### III. Damages

Having determined Defendant Marker, Inc.'s liability, the Court turns next to the question of damages. As discussed, Plaintiffs must provide "an evidentiary basis for the damages sought"— mere allegations will not suffice. *See Metro Found.*, 699 F.3d at 234; *see also Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). "[A] district court may determine there is sufficient evidence either based upon the evidence presented at a hearing or upon review of detailed affidavits and documentary evidence." *Metro Found.*, 699 F.3d at 234. In that vein, Rule 55(b)(2) permits a hearing on the damages inquiry, but it does not require one. *Id.*; *see also Finkel*

---

*Inc.*, 498 F. Supp. 2d 586, 596 (E.D.N.Y. 2007) ("[I]f a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by § 301, unless they require substantial interpretation of the CBA.").

13

*v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (noting that "no evidentiary hearing was necessary" where the plaintiff "did not ask for one but instead submitted documentary evidence of damages" and "[n]either [of the defendants] submitted any response in opposition"). At base, Plaintiffs must provide evidence sufficient to permit the Court "to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155.

From the outset, Plaintiffs' application suffers from a lack of proper authentication. In support of their requests for the deductions, contributions, and interest due, Plaintiffs only (1) reference the CBAs and Agreement attached to the Complaint; (2) provide copies of contribution reports from May 2015 through August 2015; and (3) submit the Affidavit of their attorney. *See* ECF No. 9. The Affidavit references figures apparently drawn from records maintained by Plaintiffs, but Plaintiffs' attorney "makes no assertion that he is the custodian of the records or otherwise responsible for maintaining them." *LaBarbera v. Rockwala Inc.*, No. 06-CV-6641 (CPS)(VVP), 2007 WL 3353869, at *5 (E.D.N.Y. Nov. 8, 2007) (adopting report and recommendation); *Bricklayers Ins. & Welfare Fund v. David & Allen Contracting, Inc.*, No. 05 CV 4778(SJ)(VVP), 2007 WL 3046359, at *4 (E.D.N.Y. Oct. 16, 2007) (same) (adopting report and recommendation); *see also Trustees of Local 522 Pension Fund v. Tri-Boro & Rest. Supply Co., Inc.*, No. 12-CV-0163 (KAM)(LB), 2013 WL 685377, at *4 (E.D.N.Y. Feb. 24, 2013). Furthermore—and as discussed *infra*—not all of the amounts are supported with documentation. "The absence of an affidavit by a person with actual knowledge of the facts, supported by proper documentation, deprives the [C]ourt of the ability to make an independent assessment of the damages to be awarded." *LaBarbera*, 2007 WL 3353869, at *6; *David & Allen*, 2007 WL 3046359, at *5 (same). Plaintiffs should have provided affidavits from individuals with actual knowledge of the facts, who can properly authenticate the damages, and the underlying records that form the

basis for the damages calculations. On the papers submitted, the Court cannot properly determine the damages owed.

Even if the Court were able to proceed with its damages assessment, a number of the amounts appear to be incorrect or unverifiable. Accordingly, in the interest of judicial economy (should this application be corrected and refiled), the Court briefly highlights additional issues with the current application.

### A. Deductions Under the CBAs[7]

The Court cannot discern the basis for the claimed amount of deductions owed from May 2015 through August 2015. In the Complaint, Plaintiffs simply alleged that the amount due was "$696.40." ECF No. 1, at 5. That number does not, however, appear anywhere in the Motion for Default Judgment. Instead, the Affidavit simply states that the attached "contribution reports show[] contributions and wage deductions owing in the total amount of $10, 673.83." ECF No. 9-1, at 4. Plaintiffs fail to indicate where the contribution reports designate any deductions due—by the Court's reading, the reports appear to relate only to contributions. *See* ECF No. 9-1. In fact, in calculating the purported interest due on the contributions, Plaintiffs appear to use a near-identical amount for the total "contributions"[8] as they did for the total contributions and deductions. *Compare id.* at 5 ($3,310.37 + $2,656.34 + $2,583.25 + $2,123.37 = $10,673.33), *with id.* at 4 ($10,673.83, "the total" contributions and deductions allegedly due).

---

[7] The Court addresses deductions, but observes a number of confusing discrepancies in Plaintiffs' Motion. The Affidavit cites "Defendants' failure to remit employee wage deductions to IBEW and make Employer contributions to the [Plaintiff Funds]," but then states only that "Plaintiff seek damages in the amount of monies owed to the Funds." ECF No. 9-1, at 2. It later describes Defendant Marker, Inc.'s "default[] on . . . monthly contributions and remittance of union dues deducted from employees' pay," and it notes that Plaintiffs "are owed contributions and remittances," but it then describes the total sum owed as being for "delinquent contributions, interest and penalties and legal costs . . . plus attorneys [sic] fees . . . and costs." *Id.* at 4, 6.

[8] If Plaintiffs are using the term "contributions" here to refer to both contributions and deductions, that confusion speaks to the lack of clarity afforded the Court in assessing damages.

Additionally, the Affidavit cites Section 3.09 of the CBAs as the basis of Defendant Marker, Inc.'s obligation to make the deductions. *See id.* at 3. But Section 3.09 provides that "[t]he amount to be deducted shall be the amount specified in the approved Local Union Bylaws." ECF No. 1-1, at 14; ECF No. 1-2, at 9. The Court has no indication of that specified amount, nor any further documentation to that end. Accordingly, even if the Motion for Default Judgment had provided an actual amount for the deductions owed, the Court would have no basis on which to determine its accuracy.

### B. Contributions Under the CBAs

Plaintiffs' claimed amount of contributions due from May 2015 through August 2015 does not appear to be correct. The Plaintiff Funds include the Annuity Fund, the Health and Welfare Fund, the JATC Fund, and the Pension Fund. Yet, in the Complaint, Plaintiffs listed amounts due for the Pension Fund ($2,374.00); Health and Welfare Fund ($7,300.06); JATC Fund ($232.13); and the "Labor Management Cooperation Committee And Administrative Management Fund" ($71.24). ECF No. 1, at 5. If that final allegation is supposed to be a joint reference to the "Administrative Maintenance Fund" provided for in Section 6.06 of the Inside Agreement, *see* ECF No. 1-1, at 25, and the "Local Labor-Management Cooperation Committee (LMCC)" provided for in Section 8.01 of the Residential Agreement, *see* ECF No. 1-2, at 20, Plaintiffs have provided no basis on which they would have the authority—or standing—to seek contributions for those separate, non-party funds, *see* ECF No. 1-1, at 25 ("Enforcement for delinquency payments to the [Administrative Maintenance] Fund shall be the sole responsibility of the [Administrative Maintenance] Fund or the Employers and not the Local Union."); ECF No. 1-2, at 20 ("If an Employer fails to make the required contributions to the [LMCC] Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance."); *see also Trustees of the*

*Local 7 Tile Indus. Welfare Fund v. EAQ Constr. Corp.*, No. 14 CV 4097(SJ)(CLP), 2015 WL 5793597, at *7–11 (E.D.N.Y. Sept. 30, 2015) (adopting report and recommendation).

Per the contribution reports submitted with the Motion for Default Judgment, the contributions due to each Plaintiff Fund from May 2015 through August 2015 appear to be as follows:

Health and Welfare: $2,266.28 + $1,817.33 + $1,765.05 + $1,451.40 = $7,300.06;

Pension: $737.00 + $591.00 + $574.00 + $472.00 = $2,374.00;

Annuity: $0.00 + $0.00 + $0.00 + $0.00 = $0.00[9]; and

JATC: $71.24 + $57.57 + $56.87 + $46.45 = $232.13.

In total, those contributions amount to $9,906.19 ($7,300.06 + $2,374.00 + $0.00 + $232.13). But, as discussed, Plaintiffs offer only that the "contributions and wage deductions" together total $10,673.83. ECF No. 9-1, at 4.

### C. Interest and Penalties Under the CBAs

Plaintiffs seek interest and penalties under the CBAs for the contributions and deductions due. The Affidavit cites Section 6.07 of the Inside Agreement and "Section 6.0 (a) and (b)" of the Residential Agreement for Plaintiffs' rights and obligations upon Defendant Marker, Inc.'s failure to make the requisite deductions and contributions. ECF No. 9-1, at 3. Section 6.07 appears under Article VI, entitled "Fringe Benefits," and it is not clear from the terms of the Inside Agreement that the interest and penalty provisions apply to delinquent deductions for dues to Plaintiff IBEW. *See* ECF No. 1-1, at 25 (providing that the delinquency provisions "shall control the enforcement of payment of contributions and deductions to the several fringe benefit and related accounts under this Agreement," and referencing "payment[s] made to the Funds"). With respect to the Residential

---

[9] The Court notes that the contribution reports do not reflect any contributions owed to the Annuity Fund.

Agreement, there is no "Section 6.0(a)" or "Section 6.0(b)," but Section 6.01a appears under Article VI, entitled "Fringe Benefits," and contains the same ambiguities as Section 6.07 of the Inside Agreement. *See* ECF No. 1-2, at 16 (providing that the delinquency provisions "shall control the enforcement of payment of contributions and deductions to the fringe benefits and related accounts under this Agreement," and referencing "payment[s] made to the Funds"). While it may be the case that these include deductions for Plaintiff IBEW's dues, the Court has no explanation or further guidance from Plaintiffs. Most importantly, however, the Court cannot begin to assess what interest or penalties might be due based on the provided percentages if the underlying amounts (i.e., the deductions and contributions owed) are in question. *E.g.*, *EAQ Constr.*, 2015 WL 5793597, at *11.

### D. Interest Due Under Agreement

Plaintiffs also seek the unpaid interest due under the Agreement. Both the Complaint and Affidavit assert that the amount due is $3,011.69. ECF No. 1, at 7; ECF No. 9-1, at 4. However, the Court has been unable to replicate that number, and Plaintiffs provide no calculations to further aid the Court. *See, e.g.*, *EAQ Const. Corp.*, 2015 WL 5793597, at *11 ("[P]laintiffs' submissions do not contain sufficient information for the Court to determine how plaintiffs arrived at this figure, nor has the Court been able to duplicate plaintiffs' calculations . . . ."). In addition, it appears that the amount from the Agreement includes contributions owed to one of the separate, non-party funds addressed previously (the LMCC Fund). *See* ECF No. 1-4, at 2. As the Court already observed, Plaintiffs do not explain how they are entitled, or have standing, to recover money due to a separate fund, and—on the papers submitted—the Court cannot tell what is owed to whom.

In sum, for the reasons provided, Plaintiffs' request for damages is DENIED without prejudice to renewal upon submission of proper authentication and documentation of the amounts owed.

## IV. Attorney's Fees and Costs

Pursuant to the terms of the CBAs, Plaintiffs seek an award of $4,875.00 in attorney's fees and $500.00 in costs. ECF No. 9-1, at 5–6. However, because the Court is denying Plaintiffs' request for damages, it will also deny Plaintiffs' application for attorney's fees[10] and costs at this time, without prejudice to renewal. *See, e.g.*, *EAQ Constr.*, 2015 WL 5793597, at *15 (denying request for attorney's fees without prejudice); *Tri-Boro*, 2013 WL 685377, at *4 (postponing consideration of attorney's fees and costs).

## CONCLUSION

For the reasons stated, Plaintiffs' Motion for Default Judgment (ECF No. 9) is GRANTED against Defendant Marker, Inc. as to its liability under the LMRA, but DENIED in all other respects. Plaintiffs' requests for damages and attorney's fees and costs are DENIED WITHOUT PREJUDICE to renewal.

IT IS SO ORDERED.

Dated: September 10, 2018
　　　　Rochester, New York

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　HON. FRANK P. GERACI, JR.
　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　　　United States District Court

---

[10] The Court notes that, while Plaintiffs consist of five parties—Plaintiff IBEW and the four Plaintiff Funds—the Affidavit describes legal work for only "the four Plaintiffs – the Annuity Fund, the Pension Fund, the Health and Welfare Fund[,] and the Union." ECF No. 9-1, at 6. Indeed, the attached billing records list only those parties, with no mention of work performed for the JATC Fund, the remaining Plaintiff Fund.